UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MICHAEL D. SOUZA,
Petitioner,
v.
ANTHONY MENDONSA and MARTHA COAKLEY, Attorney General,
Respondents.

CIVIL ACTION NO. 12-10705-DPW

MEMORANDUM AND ORDER
August 23, 2013

Michael Souza was convicted in Massachusetts Superior Court of murder in the first degree--on theories of premeditation and felony-murder--and of armed robbery, breaking and entering in the daytime, unlawfully carrying a firearm, removing or defacing the firearm’s serial or identification number, assault by means of a dangerous weapon, larceny of a motor vehicle, and larceny over $250. He is serving a life sentence. Having pursued various avenues for relief in the state courts, Souza now petitions for a writ of habeas corpus under 28 U.S.C. § 2254. The custodian respondents have moved to dismiss.

## I. BACKGROUND

### *A. Factual Background*

In affirming Souza’s convictions on direct appeal, the Massachusetts Supreme Judicial Court summarized the evidence introduced by the Commonwealth at trial as follows:

> On the morning of February 1, 1994, the [petitioner] and two others, Kenneth Padgett and Jamie Richards, committed two burglaries while armed with handguns supplied by the [petitioner]. While the coventurers fled from the second burglary in a stolen van, the van collided with a city of Worcester department of public works (DPW) truck and lodged in a snowbank. A DPW crew was working nearby. The [petitioner] and his coventurers then took the DPW truck at gunpoint. When that vehicle got stuck in the snow after a few hundred yards, they abandoned it and fled on foot.
>
> Chief Mortell received word of the burglaries and the incident involving the city crew shortly afterward. Responding to a call for help from the Holden police, he saw three men running across a road into a thickly wooded area near the Kendall Reservoir. Leaving his car on the road, he pursued the men into the woods on foot. As he passed a bush behind which the [petitioner] hid, the defendant shot him. Chief Mortell returned fire, and then collapsed. The [petitioner] fired at him repeatedly, eleven times in all. The fatal shot entered the victim's left side, just under his armpit, traveled through his lungs and heart, exited his right side and lodged in the inside of his upper right arm. A second shot hit the victim while he was bent over. The [petitioner] threw his gun into the snow and fled. The tracks in the snow suggested that the three coventurers split up near the location of the victim's body: Padgett and Richards went in one direction, the [petitioner] went in another. The police apprehended the [petitioner] shortly after the shooting, and apprehended Padgett and Richards the following day.

*Com.* v. *Souza*, 702 N.E.2d 1167, 1169-70 (Mass. 1998).

### *B. Procedural History*

Petitioner was convicted of the offenses described above on March 29, 1995. He was represented at trial by attorneys Michael Hussey and Christopher Skinner. The theory of defense presented at trial was that Padgett killed officer Mortell, and that the evidence did not support a joint-venture theory of Souza's guilt. *Souza*, 702 N.E.2d at 1174 nn.19-20.

Souza appealed to the Massachusetts Supreme Judicial Court,

represented by new counsel Stephen Neyman. As a "capital case" involving first-degree murder, the matter was subject to plenary review by the SJC on appeal. *See* Mass. Gen. Laws ch. 278, § 33E. Souza raised the following claims on appeal: (1) the trial judge erred in denying Souza's motion to suppress statements he made to the police after his arrest on the day of the incident; (2) the trial judge erred by giving an instruction on self-defense despite trial counsel's request that no such instruction be given[1]; (3) the trial judge erred in refusing to instruct the jury on involuntary manslaughter; (4) the trial judge erroneously denied Souza's motion for a required finding of not guilty on the armed robbery charge; (5) trial counsel erred in failing to request, and the judge erred in failing to give, instructions on a variety of lesser included offenses; (6) trial counsel erred in failing to object to the form of the verdict slip for the murder indictment because it did not require the jury to specify whether they found that the defendant had acted as a principal or as a joint-venturer; (7) the armed robbery conviction was duplicative. *See Souza*, 702 N.E.2d at 1169.

The SJC affirmed Souza's convictions on December 11, 1998. The SJC found that none of Souza's arguments had merit.

---

[1] This argument derives from Souza's first motion for a new trial, filed in January 1997 while appeal was pending. Justice Lynch of the SJC transferred the motion to Superior Court. *See* Mass. Gen. Laws ch. 278, § 33E. The Superior Court denied the motion, Souza appealed, and review of the motion was consolidated with his direct appeal.

Additionally, after conducting a plenary review of the record in accordance with § 33E, the court concluded there was "no substantial likelihood of miscarriage of justice" that would otherwise lead the court to upset Souza's convictions. *Souza*, 702 N.E.2d at 1178.

On August 31, 1999, Souza, acting *pro se*, filed a second motion for a new trial in Superior Court, raising claims of ineffective assistance of trial and appellate counsel.[2] The Superior Court denied the motion on grounds of waiver, finding that Souza was raising in the motion issues which could have been raised in his earlier appeal. In an amended application for appeal, Souza specifically faulted trial counsel for failing to pursue a theory of self-defense and for failing to understand the felony-murder and joint-venturer theories of guilt; he also faulted appellate counsel for failing to raise these issues on direct appeal. On April 13, 2005, however, with permission from the SJC, Souza withdrew his motion for a new trial without prejudice.

There then followed a cascade of theories for attacking the conviction. Souza filed a third, fourth, and fifth motion for a new trial, all of which were amended at least once. The Superior Court denied all post-conviction relief on November 24, 2010.

---

[2] The motion itself does not appear to be in the materials submitted by Souza or the respondents. However, there does not appear to be any dispute between the parties about its grounds.

*Com.* v. *Souza*, No. 1994-0234, Memorandum of Decision and Order (Mass. Super. Nov. 24, 2010). On February 11, 2011, Souza sought leave to appeal.

As relevant here, Souza's application for appeal raised the following claims for relief. Souza first argued he was denied effective assistance of trial counsel due to a conflict of interest of attorney Hussey. On March 16, 1994, shortly after he had been appointed counsel for Souza, Hussey was arrested for speeding and operating a vehicle under the influence of alcohol, and was subject to the same law enforcement and prosecutorial authority as his client. Souza argued that the conflict prevented Hussey from engaging in effective plea negotiations (because Hussey sought to avoid questioning about his own investigation), and led to a less-than-vigorous cross-examination of officers who testified at Souza's suppression hearing. Souza initially raised this issue in his fifth motion for a new trial, and it was the only issue given extended treatment in the Superior Court's November 24, 2010 denial of post-conviction relief. The court concluded that Hussey should have disclosed the potential conflict to his client. Nevertheless, the court found no "actual conflict"--which automatically would have required a new trial--because Hussey was never investigated for or charged with a criminal violation and was thus free from fear of retaliation by the prosecution. Additionally, co-counsel Skinner conducted the cross-examination of the only officer

involved in Hussey's arrest who also testified at Souza's suppression hearing. Finally, the court could find no prejudice stemming from any potential conflict of interest.

The rest of Souza's arguments related to a claim for ineffective assistance of appellate counsel Neyman. Souza contended that his defense strategy had been misguided and that his counsel should have pursued a self-defense theory. Souza thus faulted Neyman for failing to raise on appeal: trial counsel Hussey's failure to share with co-counsel Skinner notes from an early interview with Souza in which Souza indicated he may have acted in self-defense; trial counsel's failure to obtain certain crime scene photographs and to investigate self-defense claims; trial counsel's failure to allow petitioner to testify at trial in his own defense as to self-defense; trial counsel's failure to request a self-defense instruction; trial counsel's act of undermining a self-defense theory by requesting a voluntary manslaughter instruction; and trial counsel's complete disavowal of self-defense to the jury. Souza also faulted Neyman for failing to raise trial counsel's alleged failure to realize the implications of felony-murder and joint-venture theories of murder, and trial counsel's failure to object to errors in jury instructions regarding withdrawal from and abandonment of a joint-venture, which impermissibly shifted the burden of proof to the defendant. Ostensibly independent of any errors by trial counsel, Souza also faulted appellate counsel Neyman for failing

to pursue further trial counsel's objection to portions of jury instructions on voluntary manslaughter deemed inadequate by *Com.* v. *Acevedo*, 427 Mass. 714, 695 N.E.2d 1065 (1998), or to raise errors in the trial court's self-defense instruction that impermissibly shifted the burden of proof. Finally, Souza argued that he was denied a full and fair hearing regarding his ineffective assistance of counsel claims.

On December 29, 2011, Justice Cordy denied Souza's application for appeal. Under Mass. Gen. Laws. ch. 278, § 33E, Souza was not entitled to appeal unless his appeal was "allowed by a single justice of the supreme judicial court on the ground that it presents a new and substantial question which ought to be determined by the full court." Justice Cordy, acting as § 33E gatekeeper judge, stated that he had "reviewed the claims asserted by the defendant and [found] them to be either not new, not substantial, or both."

Souza petitioned in this court for a writ of habeas corpus on April 12, 2012. The grounds for relief are the same as those raised in his February 11, 2011 application for leave to appeal to the SJC, involving the alleged denial of his Sixth Amendment right to effective assistance of counsel both at trial and on direct appeal.

## II. ANALYSIS

### *A. Procedural Default*

Federal courts reviewing the lawfulness of a habeas petitioner's custody will not review questions of federal law decided by a state court "if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman* v. *Thompson*, 501 U.S. 722, 729 (1991). Accordingly, where

> a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Id.* at 750.

The First Circuit has explicitly held that a "Single Justice's finding [under § 33E] that a petitioner has not raised a 'new-and-substantial' question for further review constitutes a finding of procedural default under state law." *Costa* v. *Hall*, 673 F.3d 16, 23 (1st Cir. 2012); *accord Mendes* v. *Brady*, 656 F.3d 126 (1st Cir. 2011).

Justice Cordy, acting as the § 33E gatekeeper judge in Souza's application to appeal from the denial of state post-conviction relief, found the ineffective assistance claims now

forming the basis for Souza's habeas petition "not new, not substantial, or both." That determination constitutes an independent and adequate state ground precluding federal habeas review.

Souza argues that his claim for ineffective assistance of appellate counsel was necessarily "new" because it could not have been raised until after direct appeal. However, the SJC has rejected the argument that an ineffective assistance of appellate counsel claim is categorically "new," and the First Circuit has endorsed that principle in the context of finding procedural default of ineffective assistance of appellate counsel claims on federal habeas review. An ineffective assistance of appellate counsel claim is not new, for example, where it "merely reiterate[s] the same substantive claim asserted against trial counsel." *Costa*, 673 F.3d at 24 n.4. If this were not the case, "every claim that was available to the defendant but had been omitted from the trial and direct appeal could be recast in terms of ineffective assistance of counsel," thereby making it "new" and "eligible for collateral appellate review." *Com.* v. *Gunter*, 945 N.E.2d 386, 394 (Mass. 2011). As a general matter, collateral appellate review by the SJC in capital cases may not be used to "to entertain arguments and theories that could have been, but were not, previously raised by the defendant," where neither the law nor facts have changed and the case has already be subject to plenary review by the SJC. *Id.* at 394-95.

It appears, then, that the claims in Souza's application for

appeal (that now also form the basis for his habeas petition) should not be considered "new." Souza's claims for ineffective assistance of appellate counsel were almost entirely derivative of the alleged failings of trial counsel. Under § 33E proceedings, such failings of trial counsel could have been raised on direct appeal, *see Costa*, 673 F.3d at 23 n.3; *Mendes*, 656 F.3d at 130, and Souza could not avoid the "new-and-substantial" bar merely by recasting those same arguments as ineffective assistance of appellate counsel. Souza's about-face on self-defense was also, as the SJC warned in *Gunter*, an improper attempt to use collateral appellate review to raise a different but previously-available defense theory. The remaining claims involved challenges to jury instructions (again in the guise of ineffective assistance of appellate counsel) that were available on direct appeal and surely were the subject of the SJC's plenary review. The SJC, for example, specifically scrutinized on direct appeal the self-defense instruction given by the trial court and found that it did not improperly shift the burden of proof. *Souza*, 70 N.E.2d at 1174. Additionally, although the SJC did not address the specific language that Souza now finds objectionable in the trial court's voluntary manslaughter instructions, the fact that the SJC took note of the instruction indicates that it did not escape the SJC's plenary review. *Id.* at 1173 & n.5. Thus, Souza's ineffective assistance

of appellate counsel claim was merely a recasting of the underlying substantive arguments that were available on direct appeal and were the subject of the SJC's plenary review. They were not "new."

Under governing First Circuit law, that Justice Cordy did not specify which of Souza's claims were not new and which were not substantial is immaterial. The First Circuit in *Costa* explained that a § 33E gatekeeper justice's finding either that a claim is "not new" or that justice's finding that a claim is "not substantial" would separately "constitute[] an independent and adequate state ground in and of itself and acts to bar federal review." *Costa*, 673 F.3d at 24.[3]

---

[3] I must note my reservations about a rule that an issue found not to be substantial would without more be found to be the subject of procedural default. The First Circuit used broad and categorical language in *Costa*, but presented with a case cleanly presenting the issue, the First Circuit might be reluctant to find a federal claim procedurally defaulted where the § 33E gatekeeper justice in fact found the claim "new" but "not substantial."

The principles of comity underlying procedural default do not support barring habeas review based on a single justice's finding that a claim is "new" but "not substantial." When a habeas petitioner has "failed to meet the State's procedural requirements for presenting his federal claims," he "has deprived the state courts of an opportunity to address those claims in the first instance." *Coleman* v. *Thompson*, 501 U.S. 722, 732 (1991). Procedural default is thus designed, in a manner akin to the administrative law doctrine of exhaustion, to protect the integrity of the underlying state rule and to prevent the "'unseem[liness]' of a federal district court's overturning a state-court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." *Woodford* v. *Ngo*, 548 U.S. 81, 92-93 (2006) (citing *O'Sullivan* v. *Boerckel*, 526 U.S. 838, 845 (1999)). When a single justice of the SJC denies full-court review of a federal claim

Souza consequently cannot escape the conclusion that his federal claims were procedurally defaulted and are not susceptible of federal habeas review.

***B. Excusing Procedural Default***

The question, then, is whether Souza can establish "cause for and prejudice from the default," *Costa*, 673 F.3d at 25, or "demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice," *Coleman*, 501 U.S. at 750.

1. Cause

To show cause for default based on a finding that the claim is "not new," petitioner must explain his failure to "present all his claims of error at the earliest possible time." *Costa*, 673 F.3d at 23 (quoting *Gunter*, 945 N.E.2d at 393). What it means to show cause for default based on a finding that the claim is "not substantial" is less clear, but might involve petitioner explaining why he failed to present a claim more substantially in a timely fashion.[4]

---

because the claim is "not substantial" but otherwise properly presented, the petitioner has not deprived the state court of the opportunity to correct the alleged constitutional violation. Rather, the state has merely created a procedure whereby a single justice, rather than the entire court, may determine that there was no constitutional violation. A gatekeeper justice's determination that a claim is "new" but "not substantial" would not seem then to be anything other than a summary decision on the merits, and a claim regarding it should remain part of a federal habeas court's general review of the lawfulness of detention.

[4] The awkwardness of this inquiry, however, reinforces my reservation about finding procedural default solely based on the

Typically, establishing cause for procedural default turns on a showing of “some objective factor external to defense” that impeded efforts to comply with the state procedural rule. *Murray* v. *Carrier*, 477 U.S. 478, 488 (1986). For example, “a showing that the factual or legal basis for a claim was not reasonably available” at the time the claim should have been presented may constitute cause. *Id.* at 488. So too may “interference by officials” or other obstacles making compliance “impracticable.” *Id.*

Claims of ineffective assistance of counsel are not exempt

---

gatekeeper judge finding a claim “not substantial.” *See supra* note 3. In some cases, “cause” for the insubstantiality of a claim may resemble the common explanations for failure to present claims sooner--for example, previously unavailable facts were necessary to make the claim substantial, or ineffective assistance of counsel prevented the presentation of a claim that the gatekeeper would recognize as substantial. But in other cases, the sole “cause” for lack of substantiality will be an argument that, despite the gatekeeper justice’s view, the claim is in fact substantial. This represents disagreement with the gatekeeper justice as to his summary decision on the merits of the claim.

Even if there were procedural default in some technical sense based on a gatekeeper justice finding a claim “not substantial,” it seems to me new development of a non-frivolous dispute as to the merits of the claim should constitute adequate “cause” for default. Petitioner would then, of course, still need to show prejudice. The petitioner here has not done so. See infra Part II.B.2. If a claim determined to be “not substantial” in state court gatekeeper review is procedurally defaulted, the prejudice inquiry might be seen as a proxy (albeit under a more demanding standard) for federal merits review of the type conducted outside the procedural default setting. Of course, in all events, the scope of federal habeas will be limited as provided by § 2254(d). *Harrington* v. *Richter*, 131 S. Ct. 770, 784 (2011) (just as where state court issues opinion explaining denial of claim, habeas court may not grant relief on claim summarily dismissed unless petitioner can show the adjudication resulted from an unreasonable legal or factual conclusion).

from the general rule requiring cause and prejudice to overcome procedural default. *Costa*, 673 F.3d at 25. Ineffective assistance, however, may excuse the procedural default of another habeas claim. *Carrier*, 477 U.S. at 488. That said, "a procedurally defaulted ineffective-assistance-of-counsel claim can serve as cause to excuse the procedural default of another habeas claim only if the habeas petitioner can satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself." *Edwards* v. *Carpenter*, 529 U.S. 446, 450-51 (2000).

Souza has not demonstrated "cause" for default of his ineffective assistance claims here. The facts pertaining to Hussey's conflict of interest--based on his encounter with the police in 1994--were "known or knowable" by the time of Souza's direct appeal. *Costa*, 673 F.3d at 25. The same is true of the other alleged failings of trial counsel (including the failure to pursue and present a theory of self-defense) and Souza's various objections to the jury instructions. Although Souza has recast these claims as ineffective assistance of appellate counsel in an effort to avoid procedural default, all of these claims "were reasonably available at trial and on direct appeal." *Id.*

Souza also seeks to use ineffective assistance of appellate counsel as cause for default of his claims regarding the failings of trial counsel. Souza, however, cannot use ineffective assistance of appellate counsel for this purpose because even that claim has been defaulted. *Edwards*, 529 U.S. at 450-51. And, in

any event, Souza has not shown that the failure to raise his claims on direct appeal was anything more than a failure "to recognize the factual or legal basis" for the underlying claims, which does not itself "constitute cause for a procedural default." *Costa*, 673 F.3d at 25 (quoting *Gunter* v. *Maloney*, 291 F.3d 74, 83 (1st Cir. 2002)).

2. Prejudice

Souza has also failed to show prejudice. To establish prejudice, Souza must show not merely that the errors alleged in his defaulted claims "created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Carrier*, 477 U.S. at 494. An ineffective assistance of counsel claim, of course, also includes an analysis of prejudice. In order to prevail on a claim of ineffective assistance, defendant must show "that counsel's representation fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . In other words, a defendant must demonstrate both seriously-deficient performance on the part of his counsel and prejudice resulting therefrom." *United States* v. *De La Cruz*, 514 F.3d 121, 140 (1st Cir. 2008) (citing *Strickland* v. *Washington*, 466 U.S. 668, 688 (1984)).

The simplest explanation for lack of prejudice here is to observe that even if I reached the merits of the ineffective assistance claims, I would not find a deprivation of Souza's constitutional rights. Trial and appellate counsel's decision not to pursue a self-defense theory was the sort of tactical decision that is not the stuff of an ineffective assistance claim. *United States* v. *Ortiz Oliveras*, 717 F.2d 1, 3 (1st Cir. 1983). The mere lack of success on the chosen theory of defense also does not demonstrate that counsel failed to comprehend felony-murder and joint-venture theories of murder. And Souza has not established that counsel's failure to raise various objections to the jury instructions was the result of anything other than a realistic assessment of the prospects for success on those objections (which were, indeed, summarily rejected by the reviewing courts once belatedly raised by Souza).

3. Actual Innocence

Finally, Souza may escape procedural default if declining to consider his claims "will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. This "actual innocence" gateway is reserved for a "narrow class of cases." *Schlup* v. *Delo*, 513 U.S. 298, 314-15 (1995). The SJC, in conducting its plenary review, concisely summarized why there was no likelihood of miscarriage of justice in this case: "to escape arrest, the defendant ambushed a pursuer whom he reasonably must have known

was a law enforcement officer. Had the defendant surrendered, as he readily could have, the homicide of the officer would in all likelihood have been avoided." *Souza*, 702 N.E.2d at 1178. Despite years upon years of litigation, there is little more to the case than those few simple but tragic observations, and there is thus no risk of a fundamental miscarriage of justice in declining to excuse the default of Souza's claims for purposes of federal habeas review.

**III. CONCLUSION**

For the reasons set forth more fully above, respondents' motion to dismiss is GRANTED, and the petition for writ of habeas corpus is DENIED.

***/s/ Douglas P. Woodlock***
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE